CASE 53.—ELECTION CONTEST BY JOHN T. MAY AND OTHERS AGAINST J. B. FERGUSON AND OTHERS. —November 18, 1909.

## May, &c. v. Ferguson, &c.

Appeal from Muhlenberg Circuit Court.

W. P. SANDIDGE, Circuit Judge.

From the judgment, contestants appeal.—Reversed.

1. Intoxicating Liquors—Local Option Elections—Statutes.—Under the Cammack act (Act March 14, 1906 (Acts 1906, p. 86, c. 21)), providing for local option elections for entire counties, except that cities of the first, second, third, or fourth class may held an election on the same day, the county is absolute unit except in counties in which a city of the first, second, third, or fourth class is situated, and in such counties all of the territory outside of the city limits is an absolute unit, and the city is a separate unit, and, where a vote is offered for an entire county in which there is situated a city of the first, second, third, or fourth class, unless a separate vote is asked for and had within the limits of the city, it is bound by the result of the election in the entire county, and it is only where the citizens of the city seek and are granted a separate vote on the same day that its right to be treated as a separate unit is recognized.

2. Intoxicating Liquors—Local Option Elections—Statutes.—Where prohibitory laws are not in force in a county, any magisterial district, voting precinct, or town of any class may vote to establish prohibition within the limits of such district, precinct, or town, but, where prohibition has been established in the entire county pursuant to the Cammack act (Act March 14, 1906 (Acts 1906, p. 86, c. 21)), a unit has been established, and the vote cannot again be taken in any subdivision of the county other than in a city of the first, second, third, or fourth class situated in the county, unless it is taken in the entire county, and, so long as a city of one of the designated classes in a county preserves its identity by taking a vote on the same day that the vote is taken in the

entire county, its status is not changed by the will of the majority of the voting population of the county or of a magisterial district therein.

WILLIS & MEREDITH, BETCHER & SPARKS and J. K. FREEMAN for appellants.

### POINTS AND AUTHORITIES.

1. The petition asking for an election in a magisterial district No. 1 was insufficient and fatally defective. Kentucky Statutes, Section 2554; Nall v. Tinsley, 54 S. W., 187; Davis v. Henderson, 104 S. W. 1009; 8th Kentucky Law Rep. (abstract), 463; Napier v. Cornett, 68 S. W., 1076. '

2. The status of the territory to be affected was such that the magisterial district could not compel Central City to vote upon the local option question.

3. The voters residing in the city of Central City were not permitted to vote in the election for the magisterial district, and therefore the election in said district is and was void.

4. No election officers were appointed or elected to hold the elections in Central City and magisterial district No. 1, and therefore the elections were void. Kentucky Statutes, Section 2555; Kentucky Statutes, Section 1596a, subsec. 3; Erwin v. Benton, 87 S. W., 291.

WALTER WILKINS and TOM B. McGREGOR, Assistant Attorney General, for appellees.

### POINTS AND AUTHORITIES.

1. No notice of contest, such as the statutes contemplates has been given by appellants in this case. Sub-section No. 2 of Sec. 2566 Ky. Stat.; Vol. 23 page 468 Am. & Eng. Encyc. of law, First Ed.; Russell v. Muldraugh's Hill & etc., 13 Bush 307; Ky. River Navigation Co. v. Commonwealth, 13 Bush, 436.

2. Petition asking for election in the magisterial district sufficient. Sec. 2554 Ky. Stat.

3. The magisterial district was entitled to a vote. Eggen v. Offutt, 128 Ky. 314; Trustees & etc., v. Scott, 125 Ky. 545; Sec. 2563, Ky. Stat.

4. City election not invalid because voters residing in Central City did not vote in magisterial district election.

5. Elections not invalid because same were held by regular election officers. Sec. 2555 Ky. Stat.; Cyc. Vol. 15, page 362; Vol. 23, page 458, Am. & Eng. Encyc. of Law, First Ed.; Varney v. Justice, 86 Ky., 596; Fidelity Vault & Trust Co. v. City of Mor-

ganfield, 96 Ky., 563; Anderson v. Winfree, 85 Ky. 597; Lunsford v. Culton (unreported) 23 S. W., 946.

6. The officers who held elections were de facto officers and their acts in holding elections are valid. Justices of Jef. Co. v. Clark, Mon. 82; Wilson v. King, 3 Littell, 459; Rodman v. Harcourt & Carrico, 4 B. Mon., 224.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

In August, 1903, a local option election was held under the law then in force for the entire county of Muhlenberg. At that election a separate vote was had within Central City. The county voted dry and the city wet. No election has been held in the entire county since that time. October 6, 1906, another election was held in Central City, and the city again voted wet. In July, 1908, petitions were filed with the county judge, signed by the requisite number of voters residing in magisterial district No. 1, which is composed of six voting precincts, including Central City, asking for local option election in said magisterial district. Petitions were thereafter filed, signed by the requisite number of citizens of Central City, asking for a separate vote at the same time.

The election was on August 31st ordered to be held on December 7th, and it was so held; the officers who officiated at the regular November election, 1907, acting as the officers of this election, except in cases where they had removed from the precinct or otherwise disqualified themselves. In this election on December 7th the district went dry by something like 400 and the city by 23. The residents of the city were with few exceptions denied the right to participate in the election for the district; separate ballots being furnished to the voters for the district election from those for the city election. The wets con-

tested the validity of the election before the county board, and, its decision being adverse to their contention, they prosecuted an appeal to the circuit court, where they were again unsuccessful, and the case is brought before us for review.

Many reasons are assigned why the election should be set aside, the principal of which is that there was no authority of law to warrant the county judge in ordering a local option election in magisterial district No. 1, and from the conclusion which we have reached this is the only question which we will consider. Under the Cammack act, which became a law March 14, 1906 (Acts 1906, p. 86, c. 21), the county is the absolute unit in all counties save those in which there is situated a city of the first, second, third, or fourth class, and in such counties all of the territory outside of such city limits is an absolute unit, and the city is made a separate unit. This was a complete reversal of the order of things that had theretofore existed, for under the law in force prior to the adoption of this act the precincts and incorporated town of whatever class were recognized as sparate units, and might take a separate vote upon the question as to whether or not local option should be enforced within a given boundary or territory.

The old law was not satisfactory to the temperance or local option adherents, and, in order that the citizens in one part of a county might have a voice in determining whether or not prohibition should be enforced in another part of the county, the law was amended as above indicated so as to make the county the unit, and the only exception which the act recognizes is that cities of the first, second, third, and fourth class are made separate units, but in order for them to avail themselves of the right to be recognized

as separate units, it is necessary that they should vote upon the same day upon which the vote is taken in the entire county when the question is submitted as to whether or not prohibition shall prevail in the county. So that, where a vote is ordered upon this question for the entire county in which there is situated a city of the first, second, third, or fourth class, unless a separate vote is asked for and had within the territorial limits of such city, it is bound by the result of the election in the entire county, and it is only where its citizens seek and are granted a separate vote on the same day that its right to be treated as a separate unit is recognized. Yates, County Judge, v. Nunnelly, 125 Ky. 644, 102 S. W. 292, 30 Ky. Law Rep. 984.

Central City is a city of the fourth class. It had on the 6th day of October, 1906, voted wet. The entire county outside of said city was at that time dry. No vote had been taken in the entire county since 1903, at which time it voted dry. It is most earnestly insisted for appellant that, inasmuch as the law expressly provides that no election can be held upon this question oftener than once in three years, the county judge had no right to order an election upon this question at all unless he has ordered it for the entire county; that there is no authority in law whatever for ordering a vote in a subdivision of the county other than a city of the first, second, third, or fourth class where such county has theretofore voted dry. The whole object of temperance legislation has been to bring about prohibition and create dry territory, and courts in dealing with this class of legislation have borne in mind this primary object of the Legislature, and have construed such acts as far as possible so as to carry out this legislative intent. Hence it

has been held that where territory is wet where prohibition has not theretofore been enforced, any subdivision of a county may vote upon the question of establishing prohibition therein, but no subdivision of a county, other than cities of the first, second, third or fourth class may take a vote upon the question at all when prohibition is already enforced within such territorial limit.

In other words, where no prohibitory laws are in force in the county, any magisterial district, voting precinct, or town of any class may vote to establish prohibition within the limits of such magisterial district, voting district, voting precinct, or town; but, where prohibition has been established in the entire county, a different rule obtains. A unit has been established, and the vote can never again be taken in any subdivision of that county other than in some one of the cities belonging to the excepted class, unless it is taken in the entire county. So that, where a precinct or magisterial district has once been made dry by by a vote of the county, it must forever remain dry, unless the bond is lifted by the people of the entire county. Egen, etc., v. Offutt, etc., 128 Ky. 314, 108 S. W. 333, 32 Ky. Law Rep. 1350. It is true, in the case to which we have just referred this identical question was not before the court, but just the converse of the conditions with which we are dealing were under consideration.

There the county was wet, and the precinct had taken a vote upon the question as to whether or not prohibition should be enforced within its limits and had voted dry, and the court held that it might do so, but in the same opinion distinctly stated that, if the county in which this precinct was situated had thereto-

fore voted dry, the election would have been invalid, for prohibition having been established in the county, the unit, the will of the people therein could not be overthrown by the voters of any part of that unit.

Applying the rule announced in that case to the case at bar, we find that there are in Muhlenberg county two units of equal dignity, one including all of the county outside of the limits of Central City, the other including the territory within the limits of Central City, and, so long as the city preserves its identity by taking a vote upon the same day that the vote is taken in the entire county, its status cannot be changed by the will of the majority of the voting population of Muhlenberg county, much less of a magisterial district therein, and, the precinct or magisterial district in dry territory no longer being recognized as a unit, there was no authority under which the county judge could legally order the election in magisterial district No. 1, and, as a vote had been taken in Central City within less than three years from December 7, 1908, the county judge was without authority to order an election in said city on said date, and for these reasons both of said elections were illegal and absolutely void. This being true, it is unnecessary to consider the other questions raised upon this appeal.

The judgment is reversed, with directions to the lower court to enter a judgment in conformity with this opinion, declaring each of said elections null and void.