CASE 31.—PROCEEDINGS BY W. T. EGGEN AND OTHERS AGAINST FRANK B. OFFUTT AND OTHERS TO CONTEST A LOCAL OPTION ELECTION.—March 4.

# Eggen, &c., v. Offutt, &c.

Appeal from Nelson Circuit Court.

SAMUEL E. JONES, Circuit Judge.

From a judgment for defendants, Eggen and others appeal—Affirmed.

1. Intoxicating Liquors — Local Option — Submission to Popular Vote.—Const. section 61, provides that the General Assembly shall by general law provide a means whereby the sense of the people of "any county, city, town, district, or precinct" may be taken as to whether spirituous liquors shall be sold therein. Ky. St. 1903, section 2563, provides that elections under said provision shall not be held for any county, town, district, or precinct oftener than once every three years. Held, that the municipal divisions referred to were to be regarded as units, and that a county election favoring the sale of liquor in the county did not bar for three years such election in a magisterial district within the county.

2. Constitutional Law — Judicial Department — Encroachment on Executive.—It is not within the province of the court to pass on a question of policy involved in the enactment or enforcement of a statute, but such question must be left to legislative discretion.

P. J. BEARD for appellants.

Our contention is that when a county has voted ,as a whole, it is legal to sell under license in any portion of the county in which a license can lawfully be issued, except in such precincts or districts as were previous to the county vote under the prohibition law, and that no vote can be taken in any subdivision of the county until after three years from the date of the county election.

MORGAN YEWELL for appellees.

### STATEMENT OF PROPOSITIONS.

1. The holding of an election in Nelson county as a whole or unit on the question whether or not spirituous, vinous, or malt liquors, should be sold, bartered, or loaned, therein, which resulted in favor of the sale of such liquors, leaves the status of the county as if no such election had been held, and is no bar to the holding of an election, on that question, by a magisterial district, or any other of the subdivisions mentioned in section 61 of the Kentucky Constitution.

2. Where the vote at an election held by the entire county as a unit is recorded in favor of the sale of such liquors. Section 2563 of the Kentucky Statutes, which reads as follows· "The election or elections herein provided for shall not be held for any city, town, district, or precinct oftener than once in every three years, applies only to the holding of an election in the identical territory, and does not prevent the holding of an election on the same question by one of the subdivisions of the county.

### AUTHORITIES CITED.

Board of Trustees of New Castle v. Scott, 30 Ky. Law Rep., 895; O'Neal v. Minary, 101 S. W. P., 951; Section 61, Constitution of Kentucky; Section 2560, Kentucky Statutes; Section 2563, Kentucky Statutes; Washington v. Giddens, 31 Ky. Law Rep., 647; DeHaven v. Bommer, 31 Ky. Law Rep., 416).

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

September 1, 1906, an election was held in Nelson county, as a whole or unit, on the question as to whether or not spirituous, vinous, or malt liquors should be sold, bartered, or loaned in the county. The election resulted by a small majority in favor of the sale·of such liquors. On August 31, 1907, an election was held in magisterial district No. 4 of Nelson county on the question whether or not spirituous, vinous, or malt liquors should be sold, bartered, or loaned in that district, resulting in a large majority

against the sale of such liquors. It is contended by appellants that the county election was a bar to the holding of an election in the magisterial district for three years from the date of the county election. This contention was rejected both by the contest board and circuit court, the election in the district adjudged valid, and the contest dismissed. Appellants complain of the judgment of the circuit court, and ask this court for its reversal.

It is argued by counsel for appellants that when a local option election is held in the county as a whole, whether resulting for or against the sale of liquors, another cannot legally be held in the county as a whole, or in any district thereof, until three years shall have elapsed. We do not think this a correct view of the law. Section 61 of the Constitution provides: "The General Assembly shall by general law provide a means whereby the sense of the people of any county, city, town, district, or precinct may be taken, as to whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned therein, or the sale thereof regulated." The statutes containing the local option law of the State were enacted in pursuance of the constitutional provision supra. It will be observed that the Constitution creates five divisions of the territory to be affected, for the purpose of submitting this question to a vote. These divisions or subdivisions this court has designated units, in respect to which it is said in Trustees of New Castle v. Scott, 125 Ky. 545, 101 S. W. 944, 30 Ky. Law Rep. 895: "Does the Constitution mean, when it provides that the voters of any county, city, town, district, or precinct shall determine whether or not intoxicating liquors shall be sold therein, that one unit shall dominate the others? And, if so, which one? It is cer-

tain that a county cannot be a dominant unit ever, if a town or city, or any precinct therein, may decide the same question for itself, and contrary to the vote of the county as a whole. Nor can a town or precinct be a controlling unit, if the vote of the county to the contrary can overthrow the result in the smaller territory. Constitutions, like other instruments, must be given such construction as will give some meaning, if possible, and a consistent meaning, to every word employed. We must, therefore, search for that meaning that will not annul the privilege accorded to precincts in this matter, nor emasculate the rights given to the counties, cities, and towns. * * * There must have been some sense in which the words are used in the section of the Constitution under examination that will admit of all of them standing for something. There must be some condition under which it is possible to give effect to every unit made by that section, so that there might be a time when any one of them could dominate all others, should their views be in conflict. * * * Our construction is, in view of these conditions and the language used, that the Constitution meant that the local units named should control within their own territory the question of prohibition, and that each should have the privilege of saying conclusively that prohibition should prevail, but not conclusively that it should not. This construction harmonizes the section so as to allow all of it to stand, and to give equal force and power to each unit named. If a precinct votes that prohibition shall prevail within its territory, it is not competent for any other unit to gainsay the matter. If, however, the precinct votes against prohibition, that leaves the question, so far as it is concerned, as it was before any vote was ever taken on it. But if the town or city which includes

the precinct in question subsequently votes in favor of prohibition, the whole town or city thereby becomes dry. Or, if the county subsequently votes dry, the same result as to the county is attained. But if the county or town vote wet, and the precinct has previously voted dry, the precinct controls for itself. Thus each unit for itself has the option of putting the prohibition law into effect within its territory, and no larger or smaller unit can prevent it."

The local option law of this State, except the last amendment, known as the "Cammack Act," is contained in chapter 81, arts. 1, 2 Ky. St. (Carroll's Ed.) 1903. Sections 2554 to 2568, inclusive, prescribe the manner of putting the law into operation. Section 2560 declared the effect of the vote in the territory in which the election was held. The act of March 14, 1906 (Cammack Law, Acts 1906, p. 86, c. 21), is an amendment to section 2560 of the older statute, and its constitutionality, as well as its effect upon the section it was intended to amend, was under consideration in the case supra. After disposing of the objections urged to the constitutionality of the act in question, the opinion, in respect to its meaning and effect, declares: "At this point we may say that the act under examination was intended to change the law as to the effect of a vote on prohibition. Under the statute that was repealed by this act a vote against prohibition was given the same effect as a vote in favor of it; but the present act intended to give a different effect, by allowing each unit—without regard to any previous vote taken in any other unit—to adopt prohibition. So, without reference to when the vote was taken in a city or precinct, which resulted in a majority against prohibition, any other unit, either including or included by the territory just mentioned,

may vote for itself on the proposition, and if it votes in favor of it, prohibition in counties of the class to which Henry and Lincoln belong becomes effective in that territory."

If, as above declared, each unit can, by a majority vote therefor, prohibit the sale, barter, or loan of spirituous, vinous, or malt liquors within its territory, and no larger or smaller unit can prevent it, it necessarily follows that magisterial district No. 4 in Nelson county, being one of these units, had a legal right, by the election held therein subsequently to that held in the county as a whole, to put into effect such prohibition within its territory, and Nelson county, the larger unit cannot prevent it. When the county as a whole voted against prohibition, that left the question, so far as the county was concerned, as it was before any vote was taken on it. Such we understand to be the meaning of the act of 1906 and of the opinion in Trustees of New Castle v. Scott, supra. The county having failed to adopt prohibition, such failure left any other unit in the county free to adopt it for itself. If this were not true, the county would not only dominate the other units for three years, by preventing the holding of a local option election during that time, but, by calling another election for the county at the end of the three years and again carrying it "wet," it could dominate the other units mentioned in the Constitution for another three years, and so on from the end of one three years to another, and thereby destroy the individuality of the other units, and completely obstruct the legislative intent to encourage prohibition in subdivisions of the county where it is rejected by the county as a whole.

It is true, section 2563, Ky. St. 1903, provides: "The election or elections herein provided for shall

not be held for any county, town, district or precinct,
oftener than once every three years." But we held
in the case supra that this statutory inhibition only
applies to a second election within the time indicated
in the same or "identical territory." Manifestly it
cannot be claimed that an election held in magisterial
district No. 4 as a unit was an election in or for the
county as a unit or whole, such as was the election for
the county held in 1906. Therefore the territory in
which the elections occurred was not the same or
"identical territory." If the election of 1906 for the
county, in which the county as a whole was the unit,
had gone dry, instead of wet, the election held in dis-
trict No. 4, the smaller unit, in 1907, would have been
invalid; but inasmuch as the county election did not so
result, and the district election resulted in favor of
prohibition, and it was not held in the identical terri-
tory in which the election for the county was held, it
had the effect to put prohibition in force in district
No. 4.

It is not our province to pass upon any question of
policy involved in the enactment or enforcement of
the statute under consideration. Such questions must
be left to legislative discretion and determination.
Our duty goes no further than to fairly interpret its
meaning in the light of the language employed ,and
to pass upon the objections urged to its constitution-
ality. As already indicated, the conclusions herein
expressed merely follow, or logically result from,
those previously announced by this court in the fol-
lowing cases: Trustees of New Castle v. Scott, 125
Ky. 545, 101 S. W. 949, 30 Ky. Law Rep. 894, O'Neal
v. Minary, 125 Ky. 571, 101 S. W. 951, 30 Ky. Law
Rep. 888; Washington v. Giddens, 103 S. W. 321, 31
Ky. Law Rep. 647; DeHaven v. Bowner, 125 Ky. 800,

102 S. W. 306, 31 Ky. Law Rep. 416; Yates, County Judge v. Nunnelly, 102 S. W. 202, 125 Ky. 664, 30 Ky. Law Rep. 984.

Wherefore the judgment is affirmed.