## Fuson v. Howard, Sheriff, et al.

November 14, 1947.

James S. Forester, Judge.

Cleon K. Calvert, Grant F. Knuckles and W. L. Hammond for appellant.

H. L. Bryant for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

This action was instituted for the purpose of en-

joining the holding of a local option election in Buckeye Precinct No. 8 in Bell County.

Motions for temporary and permanent injunctions were denied. Demurrer to petition was sustained and the case was dismissed. Plaintiff appeals.

For a proper understanding of this suit it is necessary to give the chronology of local option elections in Bell County.

In May 1943 such elections were held in three magisterial districts resulting in prohibition. On September 11, 1943, a county wide local option election was held, which, because of irregularity, was invalidated in Franklin v. Helton, 298 Ky. 580, 183 S. W. 2d 532. In May 1945 another county wide election was held, which, after recount and contest, showed the county rejected prohibition as a whole by a majority of not less than 7 nor more than 13 votes. Widick v. Ralston, 303 Ky. 373, 197 S. W. 2d 261, 198 S. W. 2d 56.

On January 31, 1947, a petition was filed seeking a local option election in Buckeye, the precinct involved here. On February 3d the County Court entered an order calling an election in that precinct for April 12, 1947.

Conceiving the idea that a strict application of Kentucky statutes would prevent the holding of such an election at that time, since the county as a whole had repudiated prohibition on May 26, 1945, appellant, Sam Fuson, as plaintiff below, brought this action to enjoin the holding of the election. Position is taken that the local option laws of Kentucky, in so far as they apply to local option elections, deny to the citizens of Kentucky who oppose prohibition the equal protection of the laws and the protection of equal laws, and are, as applied, violative of the last clause of the first section of the Fourteenth Amendment of the Constitution of the United States.

Position is taken that the provisions of KRS 242.-030(5) that ''No election shall be held in the same territory oftener than once in every three years'' is equally applicable to the proponents of prohibition as to the opponents, and that if a county votes wet another

election cannot be brought in that territory until the lapse of three years.

It is insisted that rulings heretofore made by this court adjudging that after a territory votes Dry opponents cannot hold an election within three years, is contrary to and violates the "equal protection" clause of the Fourteenth Amendment to the Federal Constitution.

It is also insisted that the interpretation which this court has placed on the relative rights of those favoring and those opposing prohibition with respect to the local option elections, has resulted in a wide discrimination between the groups.

Appellant further contends that the equal protection clause is violated when the court holds that for the opponents of prohibition the words "same territory," as used in the section of the statutes above quoted, mean the identical territory in which a local option election is held, but that the same words have no meaning so far as the proponents are concerned, and that such interpretation may briefly be stated as follows:

"(a) If in a certain territory a local option election is held and the result is in favor of prohibition, no other election can be held in that territory for three years, and then the election must be held in the identical territory where the former one was was held.

"(b) If, however, the result is against prohibition, then the territory remains as though no election had been held, and the 'Drys' may hold others in the same or a lesser territory, ad infinitum."

Appellees take the position that the question is moot and the matter should be dismissed. Taken in isolation this position would be correct. True, the election has been held, but if appellant is correct herein, that election was invalid and no election could be held until after the lapse of three years from the county wide election of May 1945, referred to above. According to briefs that election has been contested and the matter is pending. Should the election be invalidated for some reason of irregularity, then if appellees are correct, the proponents of prohibition could proceed immediately toward another election. Consequently, we deem it suf-

ficiently important to warrant a forthright analysis of the questions involved.

It appears to us to be unnecessary to enter upon an extended historical treatise of the rise of legislation for the control of intoxicating liquors, other than to say that early in our constitutional history the exercise of exclusive control over the matter, under the Commerce power delegated to Congress, presented a more or less serious handicap upon the states' police power. With an ever increasing and persistent prohibitive sentiment growing up among the people, and in order to effectuate local regulations, the matter of regulation and control of intoxicating liquors became a more or less state matter. It will be noted, then, that almost since the beginning of our present system of government, the matter of liquor control has resided chiefly in the state in the exercise of its police power, except in so far as it is limited by the authority vested in the Federal Government. Consequently, the form of liquor control subject to constitutional restrictions is a matter exclusively within the discretion of the State Legislature.

It is stated in 30 Am. Jur., Intoxicating Liquors, Section 28, as follows: "The right of a state to regulate the intrastate manufacture, possession, sale, transportation, or use of intoxicating liquors, imposing such conditions, restrictions, and limitations thereon as the legislature may deem proper, or to prohibit such manufacture, possession, sale, transportation, or use entirely, is now a matter of universal recognition based on a long line of decisions both Federal and state." See also Cronin v. Adams, 192 U. S. 108, 24 S. Ct. 219, 48 L. Ed. 365; and State of Ohio v. Dollison, 194 U. S. 445, 24 S. Ct. 703, 48 L. Ed. 1062.

Thus, some states adopted a restrictive or regulatory policy. In an attempt to restrict the liquor traffic, high license fees were imposed on dealers. This practice, by making a reduction in the number in the business, mollified somewhat the asperities of the problem.

As early as before the middle of the 19th century Maine adopted state wide prohibition and apparently never abandoned her policy. Other states followed but not with the same degree of persistency.

Many states preferred a local option policy allowing each county or smaller division therein to control by vote on the matter. By section 61 of the Constitution, Kentucky provided for local option as follows: "The General Assembly shall, by general law, provide a means whereby the sense of the people of any county, city, town, district or precinct may be taken, as to whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned therein, or the sale thereof regulated. But nothing herein shall be construed to interfere with or to repeal any law in force relating to the sale or gift of such liquors. All elections on this question may be held on a day other than the regular election days."

Pursuant to section 61, above quoted, the Legislature has set up means and methods of holding a local option election. KRS 242.020 and following. Under its police powers the Legislature may provide for supplementation of measures purely local, and grant to a local subdivision such rights as it may deem best as ways and means of exercising local police power. KRS 242.-180 provides that no referendum shall be held for three years after territory votes dry. In KRS 242.210 the Legislature stated the effect on a county adopting or rejecting prohibition as follows:

"(1) When an election is held in an entire county and the majority of votes cast at the election are for prohibition, KRS 242.210 to 242.430 shall be applicable to every portion of the county.

"(2) If at the election for the entire county the majority of votes cast are against prohibition, the vote shall not make KRS 242.210 to 242.430 inapplicable in any territorial division of the county where prohibition has been previously adopted, and the status of that territorial division shall remain as if no election had been held."

Appellant contends that the above legislation is highly discriminatory, and complains of the attitude and decision of this court in determining its effectiveness. The position taken by appellant has an immediacy of appeal. This results from the fact that to appearance there frequently arises an inevitable illusion.

Therefore, it is necessary to guard against the error which arises from such a natural illusion.

It has generally been held that the right to sell intoxicating liquors is not an inalienable or constitutional right. And, subject to any constitutional limitation, it is within the power of the states to forbid the traffic altogether or to regulate it by means of licenses. The validity of the state's exercise of its police power in regulating the sale of spirituous liquors therefore, does not depend upon the question of the presence or absence of discrimination for or against particular persons or classes. There seems to be universal acquiescence to this view.

Local option has been adopted by the state in exercise of its police power as a means of regulating or prohibiting liquor traffic. Police power is a matter of legislation prerogative, and in this field the Legislature has wide discretionary powers.

In Brown v. Commonwealth, 98 Ky. 652, 34 S. W. 12, 13, we said: "The local option law does not attempt to regulate or prohibit the sale of liquors by retail, except in so far as it follows the mandate of the constitution by allowing the voters of their respective localities to prohibit or regulate the sale of liquors as the majority may determine."

In Welch et al. v. Irvine et al., 158 Ky. 798, 166 S. W. 611, 612, we said: "This unbroken line of decisions has firmly established the power of the lawmaking department to enact the legislation here assailed, and it would serve no useful purpose to answer the arguments presented by reiterating what has been so often said by this court on this subject."

In Eggen et al. v. Offutt et al., 128 Ky. 314, 108 S. W. 333, 334, involving the question herein, we said: "It is true, section 2563, Ky. St. 1903, provides: 'The election or elections herein provided for shall not be held for any county, town, district or precinct, oftener than once every three years.' But we held in the case supra that this statutory inhibition only applies to a second election within the time indicated in the same or 'identical territory.' Manifestly it cannot be claimed that an election held in magisterial district No. 4 as a

unit was an election in or for the county as a unit or whole, such as was the election for the county held in 1906. Therefore the territory in which the elections occurred was not the same or 'identical territory.' If the election of 1906 for the county, in which the county as a whole was the unit, had gone dry, instead. of wet, the election held in district No. 4, the smaller unit, in 1907, would have been invalid; but inasmuch as the county election did not so result, and the district election resulted in favor of prohibition, and it was not held in the identical territory in which the election for the county was held, it had the effect to put prohibition in force in district No. 4.''

Intemperance in the use of this particular commodity contributes frequently to poverty, crime, and to mental and physical deficiency, and consequently, bears directly' upon the moral and physical health of the community. The legislation in question in no way involves the merits of one who under it is permitted to receive a license. It is addressed solely to the question of public welfare. Whether the public welfare will be served the better by prohibiting the lawful sale of intoxicating liquors or by permitting it is a question which addresses itself to the will of the people under legislative direction. Appellant's position cannot, therefore, prevail.

The judgment is affirmed.