Scynus PARROTT, Sr., d/b/a
Koaltown/Bonanza Liquors,
Appellant,

v.

Delzinna BELCHER, County Judge Executive; Elizabeth Hunter, Jerry Johnson, W.B. Redwine and Larry Lee, Members, Board of Election of Harlan County, Kentucky; Darrell Roberts, Mayor of the City of Cumberland, Kentucky, a Municipal Corporation of the 4th Class, and Alcoholic Beverage Administrator for the City of Cumberland; Michael Cornett, Chief of Police of the City of Cumberland, Kentucky; and W.B. Redwine, Sheriff of Harlan County, Kentucky, Appellees.

No. 93–SC–204–TG.

Supreme Court of Kentucky.

March 24, 1994.

Rehearing Denied Oct. 27, 1994.

Otis Doan, Jr., Harlan, William A. Watson, P.S.C., Middlesboro, for appellant.

Robert D. Thomas, Asst. County Atty., Harlan, for appellees.

LAMBERT, Justice.

The city of Cumberland in Harlan County is a fourth class city. As a result of a city-wide local option election held on July 17, 1992, a majority of the votes were cast against prohibition, but a majority in the City Hall Precinct C103B cast their votes otherwise. Within a few months after the vote, a new petition was filed which sought another local option election for only the City Hall Precinct.

This Court granted transfer of this appeal from the judgment of the Harlan Circuit Court whereby appellees were granted summary judgment and appellant's complaint dismissed. We are called upon to construe various statutes relating to local option elections and to decide whether the three-year moratorium provided for in KRS 242.030(5) applies to a precinct located within a fourth class city which has voted to abolish prohibition.

Appellant brought this action for injunctive relief against the county judge/executive and others, but the trial court denied the relief sought holding that:

> because a precinct (when referred to in Section 61 of the Kentucky Constitution and KRS Chapter 242) is not the same territory as a City, the Court concludes, as a matter of law, that said precinct is entitled to hold a local option election on March 23, 1993, at a time within three years of the July, 1992 city wide local option election.

The heart of appellant's argument is that KRS 242.125(1) renders a precinct election within a wet city subject to the provisions of Chapter 242 and in particular, that portion which prevents the conduct of elections more often than every three years. He reaches this conclusion by implication arising from the failure of the Legislature to specifically say that the precinct is not the "same territory" as the city when it had earlier said that the city was not the "same territory" as the county. He relies on *Andrus v. Glover Construction Company*, 446 U.S. 608, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980), for the proposition that when a statute enumerates exceptions to a general prohibition, additional exceptions are not to be implied absent a contrary legislative intent. By failure of the Legislature to specifically except precincts within a wet city from the three-year rule, appellant concludes that the rule applies.

Appellees respond that the three-year prohibition contained in KRS 342.030(5) applies only to the "same territory" and that a precinct within a city of the fourth class is not the same territory as that in which the city-wide election was held. They rely on Section 61 of the Constitution of Kentucky, KRS 242.010(5), KRS 242.030(5), and KRS 242.125(1) as establishing that counties, cities, districts and precincts are separate and distinct political subdivisions for purposes of local option and that neither is the same territory as the other.

This Court has struggled to construe these confusing and perhaps ambiguous statutes. The point of beginning is KRS 242.010(5) whereby the word "territory" is defined to mean county, city, district or precinct. From there we turn to KRS 242.030(5), a provision which prohibits holding local option elections in the "same territory" more often than once every three years. The final statute is KRS 242.125(1) which is as follows:

> (1) In any county in which the provisions of KRS 242.220 to 242.430 are applicable by reason of an election for the entire county having heretofore resulted in favor of prohibition, an election may be held in any city of the first four (4) classes in such county to take the sense of the people of the city as to the discontinuance of prohibition in the city. For this purpose the election in the city shall not be deemed to be an election in the "same territory" as that in which the county-wide election was held within the meaning of Sub-section (5) of KRS 242.030. If, at the election for a city, the majority of the votes cast are against prohibition, the vote makes KRS 242.220 to 242.430 inapplicable to the entire city, but this does not prevent an election from thereafter being held in any precinct of the city, subject to the provisions of Chapter 242, to take the sense of the people of the precinct as to the application of KRS 242.220 to 242.430 in the precinct.

From KRS 242.010(5) and KRS 242.030(5), it is clear that local option elections in the same territory may not be held more often than every three years. As such, the question is whether KRS 242.125(1) expressly or impliedly treats a precinct within a fourth class city as the "same territory" as the entire city, or whether what appears to be plain statutory language is controlling.

The final sentence of KRS 242.125(1) (quoted above) appears to grant a single precinct the right to hold a subsequent election without regard to the three-year moratorium in recognition that it is not the same territory as the city. With apology for the repetition, the statute says

> This [the vote against prohibition] does not prevent an election from thereafter being held in any precinct of the city, subject to the provisions of KRS Chapter 242, to take the sense of the people of the precinct as to application of [the prohibition enforcement statutes] in the precinct.

The foregoing language is too compelling to ignore. Avoidance of its meaning would require resort to rules of construction or the embrace of inexplicit references as decisive. When this is coupled with the manifest distinction between the political subdivisions set forth in KRS 242.030(5), each being separate territories, we have no doubt as to the legislative intent in this regard. In KRS 242.125(1), the Legislature intended to permit a city of one of the first four classes to separately determine whether it would be bound by prevailing county-wide prohibition; but it also authorized the voters of a single precinct within that city to determine whether they should be bound by the city-wide vote or whether they should have prohibition in the precinct, all without regard to the three-year moratorium.

■ We have carefully examined this Court's decision in *Howard v. Salyer*, Ky., 695 S.W.2d 420 (1985), which upheld the constitutionality of the statutes at issue here and retained the county unit rule, but acknowledged the existence of an exception for cities of the first four classes. By this decision we break no new ground, but merely confirm the widely acknowledged proposition that a precinct within a fourth class city is not the same territory as the city. This is consistent with our decision with respect to cities located in dry counties, *Long v. Smith*, 281 Ky. 512, 136 S.W.2d 789 (1940), precincts within wet counties, *Fuson v. Howard*, 305 Ky. 843, 205 S.W.2d 1018 (1947), and precincts within wet magisterial districts, *Ball v. Hill*, Ky., 240 S.W.2d 628 (1951).

For the foregoing reasons, the judgment of the Harlan Circuit Court is affirmed.

REYNOLDS, STUMBO and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., files a separate dissenting opinion in which LEIBSON and SPAIN, JJ., join.

STEPHENS, Chief Justice, dissenting.

Respectfully, I dissent.

As the majority opinion states, KRS 242.125 is the controlling authority in this case. Section (1) of this statute contains four propositions. Inserting the facts of this case, KRS 242.125(1) states:

*Proposition 1:* In any county [Harlan County] in which the provisions of KRS 242.220 to 242.430 are applicable by reason of an election for the entire county having heretofore resulted in favor of prohibition [Harlan County has been "dry" since 1963], an election may be held in any city of the first four (4) classes [City of Cumberland—4th class] in such county to take the sense of the people of the city as to the discontinuance of prohibition in the city. [City of Cumberland, wet/dry election— July 17, 1992.]

*Proposition 2:* For *this* purpose the election in the city shall not be deemed to be an election in the "same territory" as that in which the county-wide election was held within the meaning of Sub-section (5) of KRS 242.030. (Emphasis added.)

*Proposition 3:* If, at the election for a city, the majority of the votes cast are against prohibition [7/17/92 results: wet—618 votes, dry—550 votes], the vote makes KRS 242.220 to 242.430 [the prohibition enforcement statutes] inapplicable to the entire city,

*Proposition 4:* but this does not prevent an election from thereafter being held in any precinct of the city [Precinct C103B], *SUBJECT TO THE PROVISIONS OF KRS CHAPTER 242*, to take the sense of the people of the precinct as to the application of KRS 242.220 to 242.430 in the precinct. (Emphasis added.)

The majority opinion points to the language of the final proposition and states, "The foregoing language is too compelling to ignore. Avoidance of its meaning would require resort to rules of construction or the embrace of inexplicit references as decisive." I agree completely that "the language is too compelling to ignore." However, I would respectfully suggest that the majority has, in fact, avoided its meaning, and thereby fallen prey to its own admonition. Nowhere in the opinion does the majority address, explain, or even refer to the language in the statute that precinct elections are "subject to the provisions of Chapter 242."

With respect to KRS 242.125(1) and the specific issue in this case, the plain language that makes a precinct election under this circumstance "subject to the provisions of KRS Chapter 242," *without more,* means just what it says. Proposition 2, where the legislature unambiguously states that "for *this* purpose" (emphasis added) a city election "shall not be deemed to be an election in the same territory as that in which county-wide election was held," is strong evidence of this. Obviously, the legislature felt a definite need to spell out that, under this circumstance, these two political subdivisions are not to be considered to be the "same territory." The negative implication is that, under other circumstances, they are to be considered the same territory. If, as the majority argues, counties and cities are to be construed as manifestly distinct political territories, in the first place and for all purposes, then Proposition 2 is entirely superfluous. There simply would be no reason to add specific language to the statute to prevent the application of a provision (KRS 242.030(5)) that, by definition, already does not apply.

In the same vein, it makes no sense for the legislature to qualify precinct elections as "subject to the provisions of Chapter 242," without excepting the time limitation of KRS 242.030(5) as a governing provision, unless it did not intend the three-year moratorium to govern. This reasoning is even more persuasive when KRS 242.125(1) is read in conjunction with KRS 242.1292.

KRS 242.1292 allows for precinct elections in second class cities where prohibition exists in all or part of the city, upon a showing of "economic hardship" in a precinct, as defined by subsection (10) of that statute. The important point, for purposes of construing KRS 242.125(1), is that subsection (3) of KRS 242.1292 expressly declares that a precinct election held pursuant to that statute "shall

not be deemed to be an election in the same territory' [as the election in the second class city] within the meaning of subsection (5) of KRS 242.030 ..." [1]

This demonstrates rather conclusively, I believe, that when the legislature intends for the three-year moratorium not to be the rule, it explicitly says so. In my view, the inclusion of specific statutory language stating that in KRS 242.1292 precinct elections, the three-year moratorium does not govern, makes the omission of similar language in KRS 242.125(1) rather glaring.

The combined effect of (1) the plain meaning of the language that requires KRS 242.125(1) precinct elections to be "subject to the provisions of Chapter 242" and (2) the conspicuous absence of any language that the three-year moratorium does not govern, is irresistible. If the legislature intended for the basic rule of KRS 242.030(5) not to regulate precinct elections in KRS 242.125(1), it would have stated so in the statute, as it patently did in KRS 242.1292(3).

As the majority opinion observes, its conclusion that KRS 242.030(5) does not apply because a precinct within a city is not the "same territory" as the city, is consistent with parallel rulings of this Court in the past.[2] However, "we should not adhere blindly to precedent, simply because it is precedent." *Howard v. Salyer,* Ky., 695 S.W.2d 420 (1985) (Leibson, J., dissenting).

There exists no clear basis for a presumption (which is the gist of the majority opinion) that because counties, cities, districts, and precincts are singularly denominated in KRS 242.010(5) as a "territory," that the legislature intended for each unit to be necessarily treated as a *different* territory. The purpose of Section 61 of the Kentucky Constitution was to provide for *local* option.

---

1. KRS 242.1292(3) reads in full: The election shall be held in such precinct or precincts in the manner prescribed in KRS 242.010 to 242.040 and KRS 242.060 to 242.120. Such an election shall not be deemed to be an election in the "same territory" within the meaning of subsection (5) of KRS 242.030; provided, however, that no election on the same question shall be held in the same precinct or precincts more often than once every five (5) years.

2. *See, Long v. Smith,* 281 Ky. 512, 136 S.W.2d 789 (1940) (city not "same territory" as dry county); *Fuson v. Howard,* 305 Ky. 843, 205 S.W.2d 1018 (1947) (precinct not "same territory" as dry county); and *Ball v. Hill,* Ky., 240 S.W.2d 628 (1951) (precinct not "same territory" as wet district).

Chapter 242 embodies the statutory scheme for implementing the intent of the delegates. At least twenty-four statutes make some reference to the concept of "territory." It makes perfect sense for the legislature to use a generic term like "territory" to denominate any one of the politically autonomous units to which these twenty-four statutes apply. For the legislature to have separately identified "county, city, district, or precinct" each time the word "territory" appears in Chapter 242, would be cumbersome to the point of absurdity.

In sum, there is absolutely no evidence that the legislature intended to exempt precinct elections held pursuant to KRS 242.125(1) from the three-year moratorium in KRS 242.030(5). As demonstrated above, there is strong evidence to the contrary. Accordingly, I would reverse the judgment of the Harlan Circuit Court.

LEIBSON and SPAIN, JJ., join this dissenting opinion.